248 P.2d 659

CRAIG et al. v. COX.

No. 5473.

Supreme Court of New Mexico.

Sept. 27, 1952.

John E. Hall, Allen M. Tonkin, Albuquerque, for appellants.

G. T. Hanners, Lovington, for appellee.

COORS, Justice.

The plaintiffs appeal from the judgment of the lower court in an action to establish the existence of a lost instrument and for the decree of its specific performance.

The plaintiffs and the defendant are the surviving heirs of Robert J. Craig and Nettie Odell Craig. In 1916 the Craigs and their children moved from Texas to Tatum, New Mexico, where they purchased a 640 acre farm. Title to the land was divided between the mother and father and the old-est son, Marion J. Craig—160 acres in the name of the mother, 320 in the name of the son and the balance in the name of the father. The purpose of thus dividing the ownership was to misrepresent the amount of land owned by the father and thereby permit him to remain eligible to file on a government homestead. It developed the father could find no desirable land on which to file, and the son conveyed the acreage standing in his name to the father, while the mother retained the quarter section in her name as her separate property.

The father died intestate in 1932 and his estate was administered, but there was no division of it among the several heirs. The mother and the eleven children became the owners of respective five-eighths and three-eighths interests in the 480 acre tract standing in the name of the father upon his death under the laws of intestacy respecting community property.

The mother continued to live on the farm, the entire acreage having been mortgaged in 1921 to the Federal Land Bank of Wichita.

In 1935 an opportunity arose to lease the oil and gas underlying the 480 acre tract. The lost instrument sought to be established in this action was alleged by the plaintiffs to have been executed at this time. They assert that Mrs. Craig executed an agreement in writing which provided that if the children would join with her in the lease

and relinquish to her their interest in its proceeds, she would apply from the amounts received under the lease the necessary sum to satisfy the old mortgage, and would, upon her death, leave her property to her children equally. The existence of such agreement was denied by the defendant.

The oil and gas lease was executed in 1936 on the 480 acres. The initial benefits under it were apportioned among the mother and the children, who turned their shares over to the mother and directed that thereafter payment should be made directly to her. The mortgage was satisfied and the mother continued to live on the farm until a short time before her death, when she made her home with the defendant. She died testate in 1949, leaving her interest in the 480 acres to certain, but not all of the children in equal shares.

Before her death a deed to the 160 acres held as her separate property was executed and delivered to the defendant, being duly recorded.

The plaintiffs contend that both the making of the will and the delivery of the deed violated the mother's agreement to leave her property to all of her children in equal shares at her death.

The lower court found the agreement contended for did exist but that it could be enforced only as to the 480 acre tract because of failure of sufficient corroborative proof as to the 160 acres held as the separate property of the mother. On the trial of the case it was contended the 160 acres was community property as was the 480 acres, but the court found it was separate property and there is no appeal from that portion of the judgment. The trial court further found the making of the will was in violation of the agreement and directed that the plaintiffs were entitled to a decree of specific performance as to the 480 acres of community lands by having the devisees of an unequal interest hold title in trust for those who did not receive any equal share as provided by the agreement. Title to the 160 acre tract was quieted in the defendant as against the claims of the plaintiffs.

The plaintiffs appeal from that portion of the judgment which denied specific enforcement of the agreement as to the 160 acre tract. No cross appeal is taken from the judgment of the trial court regarding the 480 acre tract.

The plaintiffs contend first that there is not substantial evidence to support the findings of the trial court to the effect the lost instrument had been proved only as to the 480 acre tract, urging if there was an agreement, it covered the entire farm or nothing at all, and suggesting, though not arguing, that the findings of the trial court are inconsistent. Under their second point the plaintiffs say there was sufficient corroborative evidence to satisfy the requirements of

our corroboration statute, Sec. 20–205, N.M. S.A.1941 Comp. As these two points present related facets of the same essential problem, we will rule on them together.

The findings of the trial court necessary to our consideration read as follows:

"8. That on or about February 5, 1935, the said Nettie Odell Craig made an agreement with her children, the same being in writing and signed by her, under the terms of which she was to receive the income from the farm and in return make certain disposition of her interest in the community property upon her death; but that the testimony of plaintiffs that such written agreement included the separate property of Nettie Odell Craig, has not been corroborated to satisfy the requirements of Sec. 20–205 of the 1941 Compilation.

"9. That under the terms of said written agreement said Nettie Odell Craig was to receive the bonus money on the oil and gas lease and the delay rentals, and the income from the farm lands, pay the balance owing the Federal Land Bank under the mortgage, make no deeds or wills affecting or disposing of her interest in the community lands, and upon her death leave her interest in the community lands in equal shares to her children.

"10. That the said agreement in writing did not describe any land by section, township or range or other means of identification except that it described the same as being 'all my property.' "

Our corroboration statute, cited supra, provides:

"In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence."

In Gildersleeve v. Atkinson, 1891, 6 N. M. 250, 27 P. 477, 480, this court defined corroborative evidence in the following language:

" * * * Corroborating evidence is such evidence as tends, in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings testified to by the witness whose evidence is sought to be corroborated, which allegation or issue, if unsupported, would be fatal to the case; and such corroborating evidence must of itself, without the aid of any other evidence, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports. * * *"

The plaintiffs point to certain circumstances and testimony which they contend amply corroborate an agreement covering the 160 acre tract. First they point to the manner of treatment of the two tracts as a single farm, the mortgaging of the two parcels together, the manner of paying taxes and the rental of the properties without segregation into separate tracts, contending this treatment tends to show the mother covered the entire property, both the community property and her separate property, in the agreement. However, there is persuasive testimony that the mother did distinguish between the property held as community property and that which stood in her name alone. Over a period of years she resisted entreaties by her husband to sell the farm, especially the 160 acres which she considered her sole and separate property. The trial court found the 160 acres was Mrs. Craig's separate property, and that finding is not attacked. While the two units may have been treated as a single farm for many purposes, it does not follow that they must have been so treated for all purposes.

The appellants next rely upon the testimony of a notary public, Schultz, to corroborate the agreement. This witness related that although he was ignorant of any agreement as alleged by appellants (they having contended he typed the instrument) he did go to the appellant Mrs. Eula Allen to procure her signature on the lease; that she would not sign it; and that a day or so later he made a second trip to see her, at which time she signed the lease. The appellants maintain this circumstance supports the conclusion that Mrs. Allen refused to sign until the mother executed the agreement. In our view the delay in signing the lease may as well have been occasioned by Mrs. Allen's desire to make inquiries concerning the value of her interest or the terms of the lease, as by a refusal to sign until her mother had executed the agreement.

The appellants next propose the testimony of C. D. Kornegay as strongly corroborative of their claims. This witness was an old friend of the family and he related statements by Mrs. Craig respecting the agreement. His testimony, so far as pertinent, reads as follows:

"A. I carried my wife up to Mrs. Craig as I was going to Tatum attending to business and I left her there with Mrs. Craig while I was gone, and at this special time when I came back they were sitting there talking and I knew these people they had been down to try to lease some from me, and I knew he was trying to lease some land for oil, and I asked her if she leased her land and she said 'Yes, I did,' and she said 'I have got everything straightened out,' and she said 'the children have all agreed to sign all the rentals and let me have the bonus money to pay

the debt on my land and my cattle, and then take the bonus money and rent off the place to sustain me the rest of my life if I would not make any deed and leave it so they could divide it among themselves at my death.' That was the substance of the conversation as I recall it."

Kornegay's testimony is not precise or certain as to the terms of the agreement, or the land or acreage involved, and his sole knowledge of any agreement was based upon a neighborly conversation with Mrs. Craig which occurred at least some 15 or 16 years ago.

Viewing the testimony as a whole, then, we cannot say the trial court erred in ruling there was insufficient corroboration to support enforcement of a claimed agreement covering the 160 acres.

In the plaintiffs' brief in chief we find this statement: "Either the Agreement was as testified to by the plaintiffs or it did not exist at all, and the Court should have so held." The assertion of the plaintiffs that the refusal of the court to give them all they asked for is not supported by substantial evidence is unique in the sense that they admit that if the court had found no agreement at all existed, such finding could not have been similarly attacked. We fail to see how their assignment is defensible. If they admit the court could have, under the evidence, refused to give them anything

at all, it is difficult to see how they can assert the court had no right to give them only part of what they wanted. The assignment is without merit.

The judgment is affirmed.

It is so ordered.

SADLER, McGHEE and COMPTON, JJ., concur.

LUJAN, C. J., not participating.